IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MATTHEW LEE PHILLIPS,

      Plaintiff,

v.                                                     No. 2:23-cv-0956 MLG/DLM

GALACTIC ENTERPRISES, LLC,
*a foreign limited liability company*,

      Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Defendant Galactic Enterprises, LLC's (Galactic) Motion to Dismiss for Failure to State a Claim.[2] (Doc. 3.) Having considered the briefs and the relevant law, the Court finds: (1) Plaintiff Matthew Lee Phillips (Phillips) failed to plead facts sufficient to show state action in support of his constitutional claims; (2) he failed to exhaust his administrative remedies before the Equal Employment Opportunity Commission (EEOC) or the New Mexico Department of Workforce Solutions (NMDWS); and (3) he failed to state a claim upon which relief can be granted for wrongful termination and breach of implied contract.

Accordingly, the Court recommends GRANTING Defendant's Motion to Dismiss and DISMISSING Phillips's claims asserting violations of his Second and Fifth Amendment rights, as well as his Title VII claim, with prejudice. The Court further recommends DISMISSING Phillips's wrongful termination and breach of implied contract claims without prejudice.

---

[1] United States District Judge Matthew L. Garcia referred this case to me pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. (Doc. 13.)

[2] Plaintiff filed a document titled "Motion to Deny Dismissal and Request to Push to Jury Trial." (Doc. 10.) The Court will interpret the filing as his Response to the Motion to Dismiss.

I.      **Factual and Procedural Background**

Phillips's hand-written Complaint is composed of a two-page state civil complaint form, 13 typed pages of allegations, and 40 pages of attachments including the Article, emails, and filings related to the criminal charges filed against him.[3] (*See* Doc. 1-1.) Although Phillips does not list specific causes of action, because he is proceeding pro se the Court liberally construes his pleadings to assert the following claims. *See Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992):

Claim 1: Violations of the Second and Fifth Amendments;

Claim 2: Violation of Title VII of the Civil Rights Act of 1964;

Claim 3: Wrongful termination; and

Claim 4: Breach of implied contract.

*(See* Doc. 1-1 at 8 (claims 1–2); *see generally id.* at 6–18 (claims 3–4).)

Phillips initiated this case in the Third Judicial District Court in Doña Ana County, New Mexico, on September 22, 2023. (Doc. 1 ¶ 1.) Galactic removed the matter to this Court alleging both federal question and diversity jurisdiction, on October 31, 2023. (*See* Doc. 1.) As to federal question jurisdiction, Phillips alleges his rights under the Second and Fifth Amendments were violated. He further asserted Galactic violated his rights under Title VII. (*Id.* ¶ 4.) Galactic asserts the Court has supplemental jurisdiction over Phillips's state law claims under 28 U.S.C. § 1367. (*Id.* ¶ 6.) Concerning diversity jurisdiction, Galactic states Phillips is domiciled in Las Cruces,

---

[3] The Court will clarify how Phillips labels the 13 typed pages of allegations and how it will cite that portion of the Complaint. Phillips's recitation of the facts in the typed pages is labeled "Paragraph A,(1)" and runs uninterrupted for over two pages. (Doc. 1-1 at 6–8.) "Paragraph B,(1)" is only one paragraph. (*Id.* at 8–9.) Thereafter, he lists 70 "Facts." (*Id.* at 9–18.) The Court will cite the "Paragraphs" according to page number and will cite to the "Facts" according to the following convention: (Doc. 1-1 at 9 ¶1.) In other words, the Court will cite to the page number on which a "Fact" appears and the "Fact" number using a paragraph symbol. Any reference to the attachments that the Court construes as part of the Complaint will be cited as the page number listed in Doc. 1-1.

New Mexico, and Galactic is a limited liability company organized under the laws of Delaware having only one member—Virgin Galactic Holdings, Inc., a Delaware corporation. (*Id.* ¶¶ 8–10.)

The underlying dispute arises from an encounter Phillips had with four individuals outside his home on April 17, 2020. (Doc. 1-1 at 6.) Phillips alleges the individuals attempted to burglarize his truck and assaulted him when he confronted them. (*Id.*) The individuals were later identified as three minors and one adult. (*Id.*)

Four months after the encounter, on August 13, 2020, Phillips was charged with three counts of child abuse and one count of aggravated assault with a deadly weapon.[4] (*Id.*) According to the Complaint, after the April 17, 2020 incident, the Las Cruces Sun News published an article (the Article) containing false information that was not in the police report. (*Id.*) The Article, titled "'This is a white neighborhood,' former DASO deputy allegedly tells playing children," stated that Phillips "allegedly pointed a Glock 35 pistol at the children . . . ." (*Id.* at 21.) Phillips asserts that the police reports and polygraphs prove that that he did not point a gun at the individuals. (*Id.* at 7.)

At the time of the alleged incident and the Article's publication, Phillips was employed by Galactic. (Doc. 1-1 at 9.) He maintains that he was suspended on August 25, 2020, after the HR Supervisor at Galactic, Yajaira Rose Smith, read the Article because he is "Anglo/white Caucasian

---

[4] Phillips alleges the mother of one of the children had political connections that led to him being falsely charged and that there was a slew of problems with the proceedings thereafter due to state officials' wrongdoing. (*See* Doc. 1-1 at 6–8.) Those individuals are not named as defendants, but the Court nevertheless briefly addresses Phillips's allegations to explain why they have no bearing on this matter. Phillips does not allege that the mother's connections or the subsequent legal proceedings influenced his termination. Additionally, the Court finds that the Complaint does not contain any allegations indicating the state was involved in *any* way with his termination. Indeed, Phillips alleges that "Executive leadership ultimately made the executive . . . termination decision against Matt Phillips without educated input from other managers." (Doc. 1-1 at 17 ¶ 61.)  In other words, Phillips does not allege involvement by the state in his termination decision, and the Court does not find any. Accordingly, his references to state officials' wrongdoing does not have any bearing on the state action analysis below.

. . . ."[5] (*Id.* at 9, ¶¶ 2–4; 13, ¶ 28.) Phillips contends that Smith would wear Black Lives Matter merchandise and refer to the movement at work. (*Id.* at 13, ¶ 29.) Following a termination hearing, Phillips was terminated on September 23, 2020. (*Id.* at 10–11, ¶¶ 11–15.) Phillips alleges he told Smith that he had been cleared of all charges but was nevertheless terminated because he was told his actions did not represent company values.[6] (*Id.* at 10, ¶ 12.) He also states he told the termination hearing supervisor/director of maintenance Pedro Caballer the same information. (*Id.* at 11, ¶ 15.) Phillips further claims that Galactic did not investigate the issue. (*Id.* at 9, ¶ 5.) He also asserts he was terminated because Galactic does not understand "American Civil rights and Supreme court Case law" and "has discriminatory views against American firearms owners" because it started as a British company. (*Id.* at 12, ¶ 26.)

The Complaint further contends that Smith made discriminatory comments after his termination and had complaints against her for discriminatory actions. (*Id.* at 13, ¶¶ 29–32.) Phillips, however, does not elaborate on the comments or the complaints other than saying he was told what she said by employees who would be willing to testify on the subject. (*Id.*) He also alleges that he was placed on a "do not hire list" for refusing to get the COVID-19 vaccine despite receiving it by the time he was terminated. (*Id.* at 15, ¶ 48.) According to Phillips, Galactic terminated over 60 employees based on religious and political affiliations using the "government COVID vaccine Mandates as reasoning . . . ." (*Id.* at 17, ¶ 65.) He alleges Galactic violated its employee handbook by retaliating against him after reading the Article. (*Id.* at 18, ¶ 69.)

---

[5] Phillips alleges that his termination was Smith's unilateral decision based on her discrimination towards him for his race and past occupation as a police officer. (Doc. 1-1 at 9, ¶¶ 2–5; 13, ¶28.) This is a legal conclusion, and the Court need not accept it as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "courts are not bound to accept as true a legal conclusion couched as a factual allegation") (quotation omitted).

[6] The Court notes this claim is not entirely consistent with Phillips's statement that he had been cleared of wrongdoing by the Doña Ana County Sheriff's department before charges were filed by a prosecutor from Tucumcari, New Mexico. (Doc. 1-1 at 9, ¶ 6.)

4

## II.     Legal Standards

### A. Rule 12(b)(6)

"In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits . . . and documents incorporated into the complaint by reference . . . ." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotations omitted). "To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Murphy v. United States*, No. 20-cv-557 GBW/SMV, 2020 WL 6939716, at *4 (D.N.M. Nov. 25, 2020) (quoting *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011)) (quotation marks omitted). Stating a plausible claim in a complaint does not require detailed factual allegations but needs more than a recitation of the elements of the claim or mere conclusory statements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When determining whether a claim is plausible, a court assumes the facts in the complaint are true and draws all reasonable inferences in the plaintiff's favor, but the Court need not accept legal conclusions. *See Leverington*, 643 F.3d at 723; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Indeed, a complaint may survive a Rule 12(b)(6) motion to dismiss even if it is unlikely a plaintiff will be able to prove the facts she alleges. *See Murphy*, 2020 WL 6939716, at *4. In other words, all a complaint must do is include allegations that, assuming they are true, make the claim for relief more than merely speculative, even if it is ultimately unlikely they can be proven to be true. *See Twombly*, 550 U.S. at 556.

### B. Pro Se Litigant Pleadings

In reviewing a pro se plaintiff's allegations, the Court applies the same legal standards applicable to pleadings that counsel drafts but liberally construes the allegations. *See Northington*, 973 F.2d at 1520–21. In other words, although the law the Court applies to the case remains the same, a pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). To be sure, latitude granted to pro se litigants extends beyond their pleadings, and courts are generally "lenient with pro se litigants . . . ." *Quarrie v. Wells*, Civ. No. 17-350, 2020 WL 1683450, at *3 (D.N.M. April 6, 2020) (quoting *Jiron v. Swift*, 671 F. App'x 705, 706 (10th Cir. 2016)).

The Court dismisses pro se claims without prejudice "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements, dismissal of the complaint without prejudice is preferable." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Nevertheless, "dismissal of a pro se complaint for failure to state a claim is proper . . . where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Bannister v. Coronado Finance, Inc.*, No. CIV. 07-620 JB/CEG, 2008 WL 4104067, at *8 (D.N.M. Mar. 28, 2008) (quotation omitted). Moreover, dismissal "under Rule 12(b)(6) for failure to state a claim is generally with prejudice." *Id.* (quoting *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003) (abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007))).

### III. Discussion

**A. Claim 1: Phillips failed to plead facts sufficient to demonstrate that the alleged deprivation of his constitutional rights was caused by state action.**

Generally, "rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) (citations omitted). However, the Constitution nevertheless guards against infringement by a private party when the "conduct allegedly causing the deprivation of a federal right [may] be fairly attributable to the State." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982). Determining whether conduct by a private party is state action requires a two-part analysis. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* If a plaintiff does not satisfy the first part of the analysis, however, then it is unnecessary to address the second part of the analysis. *See Tapia v. City of Albuquerque*, 10 F. Supp. 3d 1207, 1262 (D.N.M. 2014) (citing *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1210 (10th Cir. 2005)).

The Supreme Court has developed four tests to determine whether a private party's conduct is state action: "(i) the public-function test; (ii) the nexus test; (iii) the symbiotic-relationship test; and (iv) the joint-action test." *Id.* at 1260 (citing *Johnson v. Rodrigues*, 293 F.3d 1196, 1202–1203 (10th Cir. 2002); *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995)). The Court will explain why Phillips does not satisfy any of the four tests below; accordingly, the Court will not consider the second part of the analysis.

The Court finds that based on the facts alleged in the Complaint, Galactic's conduct—i.e., terminating Phillips's employment—cannot be attributed to the state. In general terms, Phillips alleges that his constitutional rights were violated because Galactic terminated him after the Article

came out without investigating the events and due to underlying biases. Whether those allegations are true is not at issue. Instead, the Court must analyze whether, under any of the four tests listed above, Galactic terminating Phillips's employment is conduct that can be "fairly attributable to the State."[7] *Jackson v. Curry County*, 343 F. Supp 3d 1103, 1109–10 (D.N.M. 2018) (quoting *Gallagher*, 49 F.3d at 1447). The Court finds that under each of the four tests, Phillips's termination cannot be attributed to the state because the decision to terminate him was not uniquely governmental or only made possible because the government enabled it or assisted in its execution.

    i.    *Public Function Test*

Galactic's decision to terminate Phillips is not state action under the public-function test because the Court finds that the termination is not "power[] traditionally exclusively reserved to the State." *Id.* (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 352 (1974). Indeed, a private entity's conduct is not converted to state action even when the state provides significant financial support and regulates the private entity's activities significantly. For example, in *Rendell-Baker v. Kohn*, a state-funded and state-regulated private school terminated employees for speaking against the administration's policies. 457 U.S. 830, 831-35 (1982). The Supreme Court affirmed the Court of Appeals for the First Circuit's decision holding that there was no state action because the school, "although regulated by the State, was not dominated by the State, especially with respect to decisions involving the *discharge of personnel*." *Id.* at 836 (emphasis added). The Supreme Court also considered whether the school was performing a public function by providing schooling. *Id.* at 842. The Court found that although schooling *is* a public function, it is not *exclusively* a public function. *Id.*

---

[7] In the Motion to Dismiss, Galactic merely asserts that its conduct in terminating Phillips is not fairly attributable to the state but does not mention the four tests nor which is the most appropriate to analyze in this matter. (*See* Doc. 3 at 4.) The Court is nevertheless obligated to consider the tests, and because Galactic failed to provide any guidance, the Court will analyze whether there is state action under each test.

Here, Phillips does not allege that Galactic is connected to the state in his Complaint. At most, he mentions in his Response that Galactic received funds from the state and complied with certain state and federal regulations. (*See* Doc. 10 ¶¶ 22–38.) The Court finds those circumstances are indistinguishable from those in *Rendell-Baker*, which the Supreme Court held were insufficient to find state action—namely, a private school receiving state funding and operating according to certain regulations. Additionally, as the Supreme Court held in *Rendell-Baker* that schooling is not *exclusively* a public function, the Court notes that although aviation activity is conducted primarily through public facilities, private aviation facilities are neither unheard of nor are they uncommon. Accordingly, the Court finds that Galactic was not performing a function reserved exclusively for the state and thus the decision to terminate Phillips was not state action. *See Rendell-Baker*, 457 U.S. at 842.

    ii.    *Nexus Test*

Galactic's decision to terminate Phillips is not state action under the nexus test. In *Blum v. Yaretsky*, the Supreme Court considered whether there was state action when nursing homes would transfer or discharge Medicaid patients without notice or an opportunity for a hearing. 457 U.S. 991, 993 (1982). The Supreme Court explained that an entity being heavily regulated does not necessarily demonstrate state action. *Id.* at 1004. Finding state action requires "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quotation omitted). A close nexus exists only when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id. Blum* held there was no state action because, although physicians were obligated to complete a form in assessing a patient, the decision to continue or adjust care was ultimately theirs

alone. *Id.* at 1006. Here, the Court finds there is even *less* connection between Galactic and the state than there was in *Blum*. Unlike *Blum*, where the completion of a patient assessment form was a state mandate, the Complaint does not allege Galactic had to satisfy state-mandated administrative requirements before terminating him. Accordingly, the Court finds the Complaint fails to allege a nexus between Galactic and the state.

    iii.    *Symbiotic Relationship Test*

Galactic's decision to terminate Phillips is also not state action under the symbiotic-relationship test because, again, there is no indication the state was involved in Phillips's termination at all, let alone that it was involved to such a degree that it was a joint participant. In *Burton v. Wilmington Parking Authority*, a restaurant, Eagle Coffee Shoppe, Inc. (Eagle), refused to serve a person solely because he was an African American. 365 U.S. 715, 717 (1961). The location Eagle occupied was not privately owned, but rather leased from a building owned and operated by the Wilmington Parking Authority (Authority). *Id.* The relationship between Eagle and the Authority, however, began before the building was completed, and the terms of the lease even required the Authority to complete the construction of the location according to certain specifications. *Id.* at 719. Eagle also enjoyed the Authority's tax exemption by leasing a publicly owned building, and the Authority also agreed to pay for certain utilities and repairs on Eagle's behalf. *Id.* at 719–20. Based on those facts, the Supreme Court held that there was state action because the "State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity . . . ." *Id.* at 725. Here, Phillips's Complaint alleges no such interdependence. To the extent he alleges *any* connection, in his Response Phillips asserts that Galactic received funds from the state (*see* Doc. 10 ¶¶ 22–38), but the Court finds that is insufficient to demonstrate the type of symbiotic relationship that existed in

*Burton*. Accordingly, the Complaint fails to demonstrate state action under this test.

    iv.    *Joint-Action Test*

Lastly, Galactic's decision to terminate Phillips is not state action under the joint-action test because there is no indication Galactic and the state worked together to cause the deprivation. *Gallagher v. Neil Young Freedom Concert*, 49 F. 3d 1442, 1453 (10th Cir. 1995). To establish joint action, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (citations omitted). Indeed, to demonstrate state officials and private parties acted together, a plaintiff cannot merely establish that the state acquiesced in the private conduct. *See id.* (quoting *Flagg Bros.*, 436 U.S. at 164.) Here, the Court finds that the Complaint does not allege the state acquiesced to his termination. To be sure, the Complaint does not even allege the state even *knew of* his termination. Therefore, if the state did not even know of Phillips's termination, it follows that the state could not have acquiesced to it, let alone have acted with Galactic to deprive him of any constitutional right. Accordingly, the Court finds that the Complaint does not allege facts sufficient to show the state and Galactic acted together to cause any deprivation.

As the Court stated, the Constitution only protects against constitutional violations by the government, not private parties. Only when a private party's actions can be attributed to the state may the private party be held accountable for violating an individual's constitutional rights. Phillips's Complaint does not allege state involvement in Galactic's decision to terminate him, and to the extent he mentions any connection to the state in his Response, it is insufficient to show state action. Accordingly, the Court finds that Phillips's Complaint fails to allege sufficient facts to demonstrate state action under any of the four tests. Therefore, the Court recommends dismissing Phillips's claims brought pursuant to the Second and Fifth Amendments of the United

States Constitution, with prejudice. *See Bannister*, 2008 WL 4104067, at 19 (dismissing with prejudice federal claims).

### B. Claim 2: Phillips did not administratively exhaust his race discrimination claims under Title VII or the NMHRA[8] and his time to do so has expired.

To bring a claim for race discrimination, "a plaintiff must file a charge against a party with the EEOC before []he can sue that party under Title VII." *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir. 1999) (citations omitted). Similarly, in New Mexico, to bring a claim under the NMHRA, a person must first "exhaust his or her administrative remedies against a party before bringing an action in district court against that party." *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001) (citations omitted). Under 28 U.S.C. § 2000e-5(e)(1) and N.M. Stat. Ann. § 28-1-10 (A), Phillips had 300 days to file a charge with either the EEOCC or the New Mexico Human Rights Commission after the alleged unlawful employment practice occurred. In his Response, Phillips acknowledges that he did not file a charge with the EEOC because his criminal case was pending.[9] (*See* Doc. 10 ¶¶ 40–41.) Regardless, as Galactic highlights, not only did Phillips fail to exhaust the administrative remedies available to him under Title VII and the NMHRA, but his time to do so has also expired. (Doc. 3 at 5.) Accordingly, the Court recommends dismissing, with prejudice, his race discrimination claim under Title VII and the NMHRA.[10]

---

[8] The Court notes that Phillips did not allege race discrimination under the NMHRA. Galactic, however, raises the issue in its Motion to Dismiss (*see* Doc. 3 at 6), so the Court will nevertheless analyze the issue.

[9] Phillips does not address his failure to file a charge with the Commission.

[10] The Court dismisses Plaintiff's race discrimination claim with prejudice because it is time-barred. *See Castillo v. City of Hobbs*, No. 13-cv-0484 SMV/WPL 2013 WL 12328840, at 4 (D.N.M. Dec. 4, 2013) (dismissing with prejudice a time-barred Title VII claim); *Davidson v. America Online, Inc.* 337 F.3d 1179, 1183 (10th Cir. 2003) (affirming a summary judgment dismissal of a Title VII claim as time-barred).

### C. Claims 3 and 4: Phillips did not plead facts sufficient to demonstrate (i) he was terminated in a violation of a public policy; or (ii) the existence of an implied contract term that restricts an employer's power to discharge.

As an initial matter, the Court highlights that Galactic removed this matter under both federal question *and* diversity jurisdiction. (Doc. 1 at 4–16.) Having recommended dismissing Phillips's federal claims, if this matter had been removed pursuant only to federal question jurisdiction, the Court would normally recommend remanding the remaining state claims. *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (citation omitted). However, because this matter was also removed pursuant to diversity jurisdiction, the Court retains jurisdiction over the state law claims and will address the merits of Phillips's wrongful termination and breach of implied contract claims. [11]

Employment contracts in New Mexico are "for an indefinite period and terminable-at-will by either party." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1109 (N.M. 1988) (citations omitted). In other words, "[g]enerally, either an employee or an employer may terminate an at-will employment contract at any time, for any reason, without liability." *Id.* (citations omitted); *see also Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 783 (N.M. 1993) ("The at-will

---

[11] In his Response, Phillips argues that there is no jurisdiction because "there is lack of diversity and court jurisdiction if the company maintains an office within New Mexico and employees with NM citizenship" because Galactic has a corporate office in Las Cruces New Mexico. (Doc. 10 ¶ 6.) Plaintiff cites *Phillips v. Las Cruces Sun News*, No. 22-cv-0357 SMV, 2022 WL 2158339, at *2 (D.N.M. June 15, 2022)—a case in which he was the plaintiff—in support of that proposition. In *Phillips*, Plaintiff argued there was diversity, in relevant part, because the Las Cruces Sun News is a subsidiary owned by a Virginia parent corporation. 2022 WL 2158339, at *1. United States Magistrate Judge Stephen M. Vidmar, however, determined that there was no diversity because subsidiaries have their own principal places of business for the purposes of diversity unless they are merely alter egos or agents of a parent corporation. *Id. Phillips* does not stand for the proposition that a corporation is a citizen of any state in which it maintains an office. Indeed, the Supreme Court has made clear that a corporation's principal place of business depends on the location of "the headquarters . . . *i.e.*, the 'nerve center' and not simply an office where the corporation holds its board meetings . . . ." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010). The Court further emphasizes that the citizenship of a *limited liability company*, such as Galactic, is determined by the citizenship of its members, not its principal place of business. *See Gerson v. Logan River Acad.*, 20 F.4th 1263, 1269 n.2 (10th Cir. 2021) (quotation omitted). Accordingly, Phillips's reliance on *Phillips* is misplaced and his argument is inapposite.

presumption that the employee has no reasonable expectation of continued employment applies only to a single term of an employment relationship—that of the employer's unabridged right to terminate the employee.") (citations omitted). There are, however, two exceptions to the general rule: "(1) wrongful discharge in violation of public policy (retaliatory discharge); [and] (2) implied contract that restricts the employer's power to discharge . . . ." *Melnick*, 749 P.2d at 1109 (citations omitted).

> i. *Phillips's Complaint fails to plead facts sufficient to demonstrate he was wrongfully terminated for performing an act authorized or encouraged by public policy or forced to perform one condemned by public policy.*

As to the first exception, "courts interpreting New Mexico law have adhered to the rule that retaliatory discharge is a narrow exception to the rule of employment at will[,]" and the standard is difficult to satisfy. *Shovelin v. Cent. N.M. Elec. Co-op, Inc.*, 850 P.2d 996, 1007 (N.M. 1993) (citations omitted). In *Zuniga v. Sears, Roebuck & Co.*, the Court of Appeals of New Mexico considered a wrongful discharge claim where the plaintiff had been terminated based on a mistaken belief he tried to steal from the store. 671 P.2d 662, 664 (N.M. Ct. App. 1983). That court stated, "in order for a discharged employee to recover, he must demonstrate that he was discharged because he performed an act that public policy has authorized or would encourage, or because he refused to do something required of him by his employer that public policy would condemn." *Id.* (quotation omitted). The court found that the *Zuniga* plaintiff could not satisfy either of those requirements. *Id.* Accordingly, the court determined that, although "the results [of plaintiff's termination] are regrettable, the discharge does not violate public policy." *Id.* at 665.

Phillips's circumstances are functionally identical to those in *Zuniga* because he too alleges he was falsely accused of wrongdoing. Similarly, however, Phillips's Complaint does not contain facts plausibly alleging that he was terminated because he performed an act authorized or

14

encouraged by public policy or refused to do something required by his employer that public policy would condemn. Instead, as in *Zuniga*, it appears he was terminated based on a seemingly false accusation, and regrettable as that may be, it does not violate public policy. Accordingly, the Court finds that Phillips's Complaint does not plead facts sufficient to plausibly allege he satisfies the first exception to the general rule that employment is at will. Thus, the Court recommends dismissing Phillips's claim for wrongful termination without prejudice.

> ii. *Phillips's cause of action for breach of implied contract fails to assert plausible facts sufficient to identify any promise that Galactic would terminate him for good cause only.*

As to the second exception, New Mexico courts "always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only." *Hartbarger*, 857 P.2d at 783. In *Hartbarger*, the Supreme Court of New Mexico considered the following evidence in holding there was no "sufficiently explicit offer or promise to terminate only for just cause": the employee handbook; the defendant's practice of retaining employees for a long time and usually firing them only for a good reason; the defendant's opinion about job security under new ownership; and the defendant's written statements regarding the plaintiff's continued employment to a lender in a verification of employment form. *See id.* at 783–87 (emphasis omitted). The plaintiff also presented arguments based on the evidence that he had a reasonable expectation he would be terminated only for just cause. *See id.* After analyzing the variety of evidence and arguments before it, the supreme court determined there was "no representation sufficiently explicit to constitute an offer not to terminate [the plaintiff] except for just cause, [and] thus there could be no implied contract to that effect." *Id.* at 786–87.

In this matter, Phillips does not "claim[] that [Galactic] promised that [he] would be

15

discharged only for good cause." *Id.* at 783. Nor do Phillips's allegations indicate that such a promise existed. Instead, he simply alleges that Galactic "[f]ailed to properly investigate /perform its due diligence" before terminating him. (Doc. 1-1 at 9.) However, Phillips's Complaint does not explain why Galactic was obligated to do so before terminating him. In other words, the Complaint presumes that Phillips's employment could be terminated only for good cause but does not support that position with arguments or reference to evidence. Accordingly, the Complaint fails to plausibly assert the existence of an implied promise altering Phillips's at-will employment, let alone one "*sufficiently explicit* to give rise to reasonable expectations of termination for good cause only." *Hartbarger*, 857 P.2d at 783. Accordingly, the Court finds that Phillips failed to plead facts sufficient to demonstrate he satisfied either of the exceptions to the general rule of at-will employment and recommends dismissal of his breach of implied contract claim without prejudice.

## IV. CONCLUSION

As to Claim 1, Phillips's allegations do not demonstrate his termination constituted state action by Defendant. As to Claim 2, Phillips also failed to administratively exhaust his race discrimination claim under Title VII or the NMHRA, and his time to do so has expired. Lastly, the Court finds that Phillips failed to state a claim as to Claims 3 and 4—wrongful termination and breach of implied contract.

**THEREFORE, IT IS RECOMMENDED** that Galactic's Motion to Dismiss (Doc. 3) be **GRANTED** as follows:

1. Claims 1 and 2 asserting violations of Phillips's Second and Fifth Amendment rights and violations of Title VII are **DISMISSED with PREJUDICE** for failure to state a claim.

2. Claims 3 and 4 asserting wrongful termination and breach of implied contract are

**DISMISSED without PREJUDICE** for failure to state a claim.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE